UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PATRICIA CALKINS, f/n/a/
PATRICIA OETMAN,

        Plaintiff,

   v.

BANKERS LIFE AND CASUALTY
COMPANY; MICHAEL A. NOWAK; THE
BUNKER INSURANCE GROUP, INC.,

        Defendants.

No. CIV. 08-2205 FCD DAD

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter is before the court on defendant Bankers Life and Casualty Company's ("Bankers") motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Patricia Calkins' ("Calkins") opposes the motion. For the reasons set forth below,[1] defendant Bankers' motion to DISMISS is GRANTED without prejudice.

/////

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

1

**BACKGROUND**

Plaintiff Calkins is a California resident who purchased a Long Term Care Policy (the "Policy") from defendant Bankers in 1999. (Compl., Ex. 1 to Notice of Removal, filed Sept. 17, 2008, ¶ 9.) Plaintiff alleges that at the time she purchased the Policy, she was told that the premiums would never increase. (Id. ¶ 5.) Specifically, plaintiff contends that Bankers, through its agent defendant Michael Nowak ("Nowak"), misrepresented the term "'guaranteed renewable,' which necessarily implies an actuarially sound premium that can be anticipated to remain level throughout the life of the policy." (Id. ¶ 28.) Plaintiff relied on these representations when she purchased the Policy. (Id. ¶ 5.)

Approximately 7 years later, in or about 2006, Bankers raised the premiums on plaintiff's Policy. (Id. ¶ 9.) Plaintiff contends that defendants "unreasonably and intentionally failed to disclose the known and/or reasonably foreseeable risks of rate increases on the subject Policy." (Id. ¶ 18.) Plaintiff also contends that Bankers intentionally sold the Policy at a lower price to increase its long term care market share, knowing that the lapse/termination rates and investment returns used in its actuarial assumptions to price the subject Policy were too high and would lead to subsequent increases in premiums to cover claims. (Id. ¶ 28.)

On July 25, 2008, plaintiff filed a complaint in the Superior Court of California for the County of Placer, alleging claims for (1) Negligent Misrepresentation against all defendants; (2) Intentional Misrepresentation against all

defendants; and (3) Professional Negligence against defendant Nowak and The Bunker Insurance Group, Inc. ("Bunker"). (Id.)

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1973 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent

with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**A.   California's Regulatory Scheme**

Defendant Bankers moves to dismiss plaintiff's complaint on the basis that insurance premiums are subject to comprehensive regulation in California pursuant to the California Insurance Code, and the Department of Insurance (the "DOI") has exclusive original jurisdiction over all matters related to ratemaking. Bankers argues that because an adjudication in favor of plaintiff would have a rate-setting effect, plaintiff's actions are barred to the extent she has failed to exhaust administrative remedies. Plaintiff does not contest the DOI's power to approve premium increases, nor does she claim that Bankers' premiums are excessive. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), filed Dec. 30, 2008, at 4.) Rather, plaintiff argues that the rate increase should not apply to her because defendant allegedly made material misrepresentations to her regarding the potential for rate increases.

Proposition 103 significantly modified the insurance regulatory regime by vesting the power to enforce the Insurance

4

1  Code in the public as well as the Insurance Commissioner (the
2  "Commissioner"). <u>Donabedian c. Mercury Ins. Co.</u>, 116 Cal. App.
3  4th 968, 982 (2004). Prior to the passage of Proposition 103,
4  California was an "open-rate state," in which rate were set by
5  insurers without approval by the Commissioner. <u>Id.</u> at 981
6  (internal quotations omitted). Subsequent to the passage of the
7  initiative, an insurer who seeks to change any rate must file a
8  rate application with the Commissioner, and the Commissioner must
9  notify the public of that application." <u>Id.</u> at 982.

10  "Under the statutory scheme enacted by the voters, the
11 charging of an approved rate cannot be deemed 'illegal' or
12 'unfair' for purposes of the Unfair Business Practices Act or,
13 indeed, tortious." <u>Walker v. Allstate Indem. Co.</u>, 77 Cal. App.
14 4th 750, 756 (2000). More specifically, sections 1860.1 and
15 1860.2 of the Insurance Code remove certain matters related to
16 the setting and charging of insurance rates from the ambit of the
17 courts. <u>Walker v. Allstate Indem. Co.</u>, 77 Cal. App. 4th 750
18 (2000). Section 1860.1 provides:

> No act done, action taken or agreement made pursuant to
> the authority conferred by this chapter shall
> constitute a violation of or grounds for prosecution or
> civil proceedings under any other law of this State
> heretofore or hereafter enacted which does not
> specifically refer to insurance.

Cal. Ins. Code § 1860.1 (West 2009). Moreover, section 1860.2
provides that "[t]he administration and enforcement of this
chapter shall be governed solely by the provisions of this
chapter." Cal. Ins. Code § 1860.2 (West 2009).

California's statutory scheme has been interpreted to bar
claims against multiple insurers based upon the charging of an

5

allegedly excessive rate that has been approved by the Commissioner. Walker, 77 Cal. App. 4th at 756.  In Walker, the plaintiff filed suit on behalf of a putative class of automobile insurance customers against over 70 insurers. Id. at 752. Each of the causes of action were "bottomed on the insurers' charging approved rates alleged nevertheless to be 'excessive' within the meaning of" the Insurance Code. Id. at 753. The court reasoned that "[i]f section 1860.1 has any meaning whatsoever," it vests exclusive jurisdiction over ratesetting activities in the Commissioner. Id. at 756. As such, under these circumstances, the Walker court held that explicit statutory authority precludes civil challenges seeking to recoup premiums charged pursuant to approved rates. Id. at 760.

However, claims by an insured arising out of the unilateral conduct of a single insurer in its application of the Insurance Code is not precluded by sections 1860.1 and 1860.2. Donabedian, 116 Cal. App. 4th at 990. In Donabedian, the plaintiff brought a claim under the California Unfair Competition Law ("UCL") alleging that the defendant insurer effectually deprived policyholders of a discount in violation of the Insurance Code. Id. at 972-75. The insurer asserted that the insured's claims were barred by sections 1860.1 and 1860.2 because the Commissioner has exclusive jurisdiction over the type of claim raised. Id. at 977, 983. The Donabedian court held that the plaintiff's claim, which challenged the unilateral conduct of a single insurer, did not involve concerted action, and had no anti-trust implications, was not a "ratemaking case" to which sections 1860.1 and 1860.2 applied. Id. at 983, 990-91

("Whatever limited force Insurance Code sections 1860.1 and 1860.2 can be said to have today, a fair reading of those provisions in context cannot immunize insurers from civil liability for illegal procedures that are creatively stowed away in a voluminous regulatory filing."). The court distinguished the claims addressed by the Walker court because the claim in Walker challenged approved rates and "rested on amorphous concepts such as 'industry trends,' 'rates of return earned by individual insurers,' and 'generic factors.'" Id. at 991-92 (quoting Walker, 77 Cal. App. 4th at 753). Conversely, the claim before the court in Donabedian was based upon an alleged violation of the Insurance Code *as applied* and did not implicate any of the ratemaking steps which requires the Commissioner to exercise his technical expertise. Id. at 992-93. Moreover, the Donabedian court held that the UCL claim, though based upon a violation of the insurance code, did not come within the exclusive jurisdiction of the Commissioner. Id. at 986-88. Accordingly, the court held that relief was not barred and exhaustion of administrative remedies was not required. Id. at 992-93.

The court holds that plaintiff Calkins' claims are not precluded by sections 1860.1 and 1860.2 because the allegations in the complaint challenge the application of the rates *as applied*, not whether the rates are excessive generally. Specifically, plaintiff contends that there were material misrepresentations made to her at the time she purchased the Policy. Her challenges are based upon the unilateral conduct of a single insurer and, unlike the claims in Walker, do not

7

challenge the Commissioner's expertise with respect to the setting of rates.  As such, under the rationale set forth by the court in <u>Donabedian</u>, this is not a "ratemaking case" and the exhaustion[2] of administrative procedures is not required.

Defendant argues that because plaintiff seeks damages, "an adjudication in favor of Calkins would have a rate-setting effect" because Bankers "would have to return past premiums and would be effectively precluded from future rate increases." (Def.'s Reply in Supp. of Mot. to Dismiss ("Reply"), filed Jan. 8, 2009, at 3.)  "A judicial act constitutes rate regulation only if its principal purpose and direct effect are to control rates." <u>Spielholz v. Superior Court</u>, 86 Cal. App. 4th 1366, 1374 (2001). However, where a claim does not directly challenge the rate, but challenges some other activity, such as false advertising or fraud, "and seeks a remedy to limit or control that activity or seeks damages from that activity," that claim is not an attempt to regulate rates, "even if the court determines the value of the services provided in awarding damages or restitution."  <u>Id.</u> at

---

[2] Defendant contends that <u>Donabedian</u> is distinguishable because the plaintiff in that case first submitted a claim to the DOI, and thus, there was no issue with respect to the exhaustion of administrative remedies.  (Def.'s Reply at 5.)  Defendant's contention misconstrues the reasoning and holding of <u>Donabedian</u>. The <u>Donabedian</u> court explained that "exhaustion" applies where a claim is cognizable in the first instance only by an administrative agency.  <u>Id.</u> at 985.  The court explicitly held that the UCL claim, which is akin to the tort claims brought by plaintiff in this case, did not require exhaustion because the agency did not have exclusive jurisdiction.  <u>Id.</u> at 986.  The court noted that the trial court stayed the action pursuant to the doctrine of *primary jurisdiction*.  <u>Id.</u> (noting that the Commissioner was to provide "an *initial* assessment, not a final determination").  However, nowhere in its papers does Bankers raise the doctrine of primary jurisdiction or request a stay pursuant to that doctrine.

8

1375-76 (holding that an award of damages or restitution for false advertising that requires the court to determine the value of services provided is not rate regulation). Plaintiff's claim does not challenge the reasonableness of the rate. Rather, it challenges the conduct of defendant arising out of its allegedly intentional and/or negligent misrepresentations at the time of sale regarding the increase in premium payments. Any award of damages would be directed to compensation for or determent from that activity. As such, it would not constitute rate regulation. Id. at 1376.

Therefore, Bankers' assertion that plaintiff's claims must be dismissed because it is barred by the Insurance Code is without merit.

**B.   Statute of Limitations**

Defendant Bankers also moves to dismiss plaintiff's complaint on the basis that her claims are barred by the statute of limitations. Specifically, Bankers argues that Calkins had constructive, if not actual, knowledge of the misrepresentations in October 1999, when she received a copy of the Policy, which provides:

> RENEWAL PREMIUM
> We may change the premium rates for this policy. We can change the premium only if We change it for all policies like Yours in Your state on a class basis. We'll provide You with written notice of any change in the premium in the time required by your State.

(Def.'s Mot. to Dismiss ("Mot."), filed Oct. 1, 2008, at 10; Ex. A to Compl.) Plaintiff argues that she was told by Bankers Life that the term "guaranteed renewable" meant that her premiums would never increase, and thus, she did not have actual or

9

1  constructive notice of the misrepresentations until 2006 when her
2  premium payments increased.  (Opp'n at 7-8.)
3       Section 338(d) of the California Code of Civil Procedure
4  allows a party to file "[a]n action for relief on the ground of
5  fraud or mistake" within three years.  "The cause of action . . .
6  is not deemed to have accrued until the discovery, by the
7  aggrieved party, of the facts constituting the fraud or mistake."
8  Cal. Code Civ. Proc. § 338(d) (West 2009).  Generally, with
9  respect to torts, "a claim accrues and the statute of limitations
10 'begins to run upon the occurrence of the last event essential to
11 the cause of action, even if the plaintiff is unaware that the
12 cause of action exists." Shamsian v. Atlantic Richfield Co., 107
13 Cal. App. 4th 967, 979 (2003) (quoting Wilshire Westwood Assocs.
14 v. Atlantic Richfield Co., 20 Cal. App. 4th 732, 739 (1993)).
15 "However, the discovery rule postpones commencement of the
16 limitation period until the plaintiff discovers or should have
17 discovered the facts essential to his cause of action." Id. at
18 980.  A plaintiff is charged with presumptive knowledge for the
19 purpose of commencing the statute of limitations when she has
20 notice or information sufficient to put a reasonable person on
21 inquiry.  Id.
22      With respect to the failure to discover a term in a
23 contract, the failure to read the contract is a circumstance to
24 be considered by the court, but is not necessarily determinative.
25 Laing v. Occidental Life Ins. Co., 244 Cal. App. 2d 811, 818
26 (1966).  "Furthermore, many cases have held that the presumption
27 that persons are familiar with the terms of written contracts are
28 not strictly applied to insurance contracts." Id. (citing Raulet

10

1  v. Northwestern Nat'l Ins. Co., 157 Cal. 213 (1910); Eagle Indem.
2  Co. v. Indus. Accident Comm'n, 92 Cal. App. 2d 222 (1949)).
3  Moreover, "[a]n insured has the right to rely on the presumption
4  that the policy he received is in accordance with his
5  application; and his failure to read it will not relieve the
6  insurer or its agent from the duty of so writing it."  Id.
7  (citations omitted).  As such, particularly in the context of
8  insurance policies, the failure of the insured to read the policy
9  and discover certain terms is not an absolute bar to a cause of
10 action seeking to enforce terms that the insured thought were in
11 the policy.  Id. at 819-20 (holding that the insured's failure to
12 read the policy and discover the lack of coverage did not bar
13 recovery of those benefits nor commence the statute of
14 limitations where an agent of the defendant expressly represented
15 to the plaintiff that he would receive those benefits and the
16 exclusion of benefits in the policy was not obvious or patent).
17 Consequently, an insured is not necessarily on presumptive notice
18 of the written terms of a Policy at the time it is received.  Id.
19 at 820.

20     Plaintiff alleges that defendant Bankers, through its agent
21 Nowak, expressly represented to her that the premiums on her
22 Policy would not increase.  Plaintiff also alleges that defendant
23 represented that the term "guaranteed renewable" meant that her
24 premiums would not be raised over the life of the Policy.  The
25 first page of the Policy provides:

> GUARANTEED RENEWABLE
> This policy is guaranteed renewable and may be renewed
> for each Family Member on any renewal date as long as
> such Family Member lives.

11

(Ex. A to Compl.)  Taking plaintiff's allegations as true, drawing all reasonable inferences therefrom, and viewing them in the light most favorable to the plaintiff, the court cannot conclude as a matter of law that plaintiff had sufficient information or notice of the alleged misrepresentations to commence the statute of limitations at the time plaintiff received the written Policy.  As such, at this stage in the litigation, the court cannot hold that plaintiff's claims are barred by the statute of limitations.

**C.   Fraud Allegations**

Finally, defendant Bankers moves to dismiss plaintiff's claims on the basis that she has not alleged intentional and negligent misrepresentation with particularity.  Plaintiff contends that her allegations are sufficient to give defendant notice of the claims against it.

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  In order to comply with the requirements of Rule 9(b), the circumstances constituting the alleged fraud "must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d

12

1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  The plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  Id. (quoting Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994)) (emphasis in original).

    Plaintiff's allegations are insufficient to give defendant notice of the particular misconduct charged.  Plaintiff alleges that defendant Bankers, through its agent defendant Nowak,[3] promised her that the premiums on the Policy would not increase during the sale of the Policy.  (Compl. ¶¶ 7, 18, 28, 32.)  She also alleges that these statements were ultimately false, as her premiums were raised in 2006.  (Compl. ¶ 6, 21-23.)  Moreover, plaintiff alleges that she had relied upon these representations in purchasing the Policy.  (Compl. ¶¶ 37-41, 44, 57.)  However, while plaintiff has identified that she applied for the Policy on August 24, 1999 and that the Policy was issued on October 10, 1999, she has not alleged when the statements she relied upon in purchasing the Policy were made or in what manner they were made.  Without such information, plaintiff's allegations plaintiff's general allegations would put defendant in the untenable position of having to deny that its representative, Nowak, has ever done anything wrong in regards to his sale of the Policy to plaintiff, a circumstance that Rule 9(b) demands be avoided.  See, e.g., Vess, 317 F.3d at 1106 (dismissing plaintiff's fraud claims where

---

[3] To the extent plaintiff seeks to assert claims based upon statements made by representatives other than Nowak, she has not stated those claims with particularity.

13

1  plaintiff failed to provide the particulars of when, where, or
2  how the alleged conspiracy occurred); United States v. SmithKline
3  Beecham, 245 F.3d 1048, 1051 (9th Cir. 2001) (holding that broad
4  allegation that the defendant "knowingly . . . changed control
5  numbers to wrongfully represent lab results did not satisfy Rule
6  9(b) where the plaintiff did not specify the types of tests, the
7  employees who performed the tests, or the dates, time, or places
8  where the tests were conducted); Decker, 42 F.3d at 1547-48
9  (requiring the plaintiff to state the time, place, and content of
10 an alleged misrepresentation and explain why the statement is
11 false and misleading in order to satisfy Rule 9(b)); U.S.
12 Concord, Inc. v. Harris Graphics Corp., 757 F. Supp. 1053, 1057
13 (N.D. Cal. 1991) ("Allegations such as 'during the course of
14 discussions in 1986 and 1987,' 'in or about May through December
15 1987,' and 'May 1987 and thereafter' do not make the grade.");
16 cf. Cooper, 137 F.3d at 627 (holding that the plaintiff satisfied
17 the requirements of Rule 9(b) where a complaint for excessive
18 revenue recognition identified some of the specific customers
19 defrauded, the four types of improper revenue recognition, the
20 general time frame in terms of financial quarters, that the fraud
21 arose out of financial statements, and that plaintiff was misled
22 by defendant's claiming that its policy was stricter than it
23 was).

24      Therefore, because plaintiff has not pled her allegations of
25 fraud with sufficient particularity, defendant's motion to
26 dismiss is GRANTED with leave to amend.  See Doe v. United
27 States, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for
28 failure to state a claim, a district court should grant leave to

14

amend . . . , unless it determined that the pleading could not be cured by the allegation of other facts.") (citations and quotations omitted); see also Vess, 317 F.3d at 1107 (holding that dismissals under Rule 9(b) are functionally equivalent to dismissals under Rule 12(b)(6) and should be without prejudice if defects are curable).

## CONCLUSION

For the foregoing reasons, defendant Bankers' motion to dismiss is GRANTED without prejudice.  Plaintiff Calkins is granted twenty (20) days from the date of this order to file a first amended complaint in accordance with this order.  Defendant Bankers is granted thirty (30) days from the date of service of plaintiff's first amended complaint to file a response thereto.

IT IS SO ORDERED.

DATED: January 14, 2009

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

15